MAX FLIGER *vs.* PENNSYLVANIA FIRE INS. CO.

SAME *vs.* HARTFORD FIRE INS. CO.

SAME *vs.* GLENS FALLS FIRE INS. CO.

MAY 20, 1927.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

*(1)  Insurance.   Oral Contracts.*

An oral contract for insurance is valid.

*(2)  Insurance.   Contracts.*

An agent of an insurance company with power to make contracts binding the company, stands to an applicant for insurance in the place of the company.

*(3)  Insurance.   Contracts.*

Where an agent represents several insurance companies, in apportioning insurance among the companies, the agent acts for both insurer and insured but not as the exclusive agent of either.  But when the apportionment is made, the authority of the agent to act for the insured ceases, and the contract for insurance if definite in other respects is then complete.

*(4)  Insurance.   Contracts.*

Where an apportionment of insurance has been made by an agent, the applicant is not bound by the business system of the agent in the conduct of his business with his principal which is not known and assented to by him.

*(5)  Insurance.   Contracts.*

Where an applicant applied for immediate insurance, if the agent agreed it should begin at once, the contract was complete and a mistake by the agent in entering the date on his memorandum, from which the policy was written should be attributed to the company and not to the insured, as the agent in entering the date was preparing instructions for the use of his clerk in the furtherance of the business of the company.

*(6)  Insurance Contracts.   Self Serving Evidence.*

The data on a memorandum prepared by an insurance agent for the use of his clerk in the preparation of a policy of insurance is self serving evidence and the fact that the entry contained admissions by the agent the benefit of which is claimed by plaintiff does not preclude plaintiff from contesting the accuracy and truth of other disconnected parts of the memorandum.

*(7)  Insurance.   Contracts.   Time.*

Where application was made for immediate insurance, retention of policies which were not to take effect until the future, by the applicant for three weeks, is not as matter of law the substitution of a new written agreement for an existing oral agreement, where applicant was unable to read, since he was entitled to a reasonable time to examine the policies and to decide if they were satisfactory.

ASSUMPSIT. Heard on exceptions of plaintiff and sustained.

STEARNS, J. These actions of assumpsit are brought against three foreign insurance companies to recover for a loss of plaintiff's stock of furs caused by a fire in his store on March 12, 1924.

The declaration in each case alleges that the defendant by its agent agreed to insure plaintiff from loss by fire and to issue a policy of insurance to him, for one year from February 15, 1924. The breach alleged is a failure to perform the oral contract of insurance and the issuance of a policy for one year from March 15 instead of February 15.

The cases were tried together by consent. The trial justice directed the jury to return a verdict in each case for defendant. The cases are here on plaintiff's bills of exceptions. The only question is in regard to the direction of the verdicts.

Plaintiff, a foreigner, claimed to be unable to read or write English. He conducted a fur shop in Providence. In December, 1923, plaintiff through one Winograd (hereafter referred to as W), an insurance broker, secured $2,000 fire insurance on his stock from the office of Clifford D. Paige (hereafter referred to as P) in Providence. P was a member of a firm which was the agent in this State of defendants and several other insurance companies. During the winter plaintiff increased his stock and needed additional insurance. February 15, 1924, he called W by telephone and asked him to come to his store. Plaintiff told him on his arrival that he needed $6,000 additional insurance and he wanted him to cover him at once for that amount. W went directly to P's office, where he arrived shortly after five p. m. It was after office hours and P was alone in the office. W testified he told P he wanted to get $6,000 additional insurance on Fliger's stock; that P asked if Fliger had that much stock in his shop; W replied that Fliger had bought a lot of furs and wanted more insurance to cover his stock at once and

that the insurance was to begin that day, February 15; that Paige said, "I guess it will be all right," and then told him that he would either give or mail to him the policies the next day. P at that interview wrote a memorandum of some kind, but did not show it or communicate its contents to W; W then asked P if Fliger was covered the same as he was on other occasions. P replied, "Yes, it is covered from the day you put the order in." On the next or the following day W received from P's office by mail three policies in the standard form. W at once made out a bill to plaintiff for the amount of the premiums which, together with the policies, he mailed to plaintiff on February 17. The bill which was dated February 15, 1924, was on a printed form with headings as follows:

date...........number of policy........company......
property insured...........premium........under the different headings, in writing, was the date "2–15–24", the number of the policy, the amount of insurance in each defendant company and premium due on each and at the bottom of the bill "expires February 15, 1925." Plaintiff on receipt of the policies put them in his safe and sent his check to W for the amount of the premiums. W testified that according to custom any premiums due on insurance business were charged by P on W's general account and he had sixty days in which to pay. After the fire, defendants refused to pay the insurance and claimed the risk did not attach until March 15, which was three days after the fire. Both W and plaintiff testified that they did not know about the change of date in the policies until after the fire. P testified that he was agent for the defendants and some other companies. He had power, without reference to his companies to accept applications for insurance, to issue binders, to countersign and issue policies and to settle losses, up to a certain amount. It was his custom to send a daily report, which is a copy of the policies issued, to each company for its information; that he told W if he wanted insurance at once it would be necessary for P to first consult with his

companies; that W then said the insurance was not wanted until the fifteenth of the next month; that it was agreed that a policy to run from one year from March 15 should be prepared and issued within a day or two.    P said his reason for doing this was that if a company did not care to take the risk, it could cancel the policy and return the premium before the policy went into effect.

P introduced as an exhibit an order blank, part of which he said he had filled out at the time of the interview with W.

"C. D. PAIGE—INSURANCE

Order Blank    .

Assured    Max Fliger......................................

Location    17 So Angell St..............................

Property    Stock......................................

...............................................

...............................................

Kind    fire...........Date    Mch 15......Term    1 yr ...

Amount    $6000........Rate........Premium..........

Tenements, No........Roof........Chimneys..........

Remarks:

| N Y Unders | 3000 |
|------------|------|
| Glens Falls | 1500 |
| Penna | 1500 |

Received.........................Winograd   Broker."

The rate "1.60" and premium "96.00" were written in on the order by a clerk to whom P the next day, February 16, gave the order with instructions to issue the policies.    The clerk then filled out and countersigned, as attorney for P, three policies, in the standard form and for a uniform premium rate.    These policies purported to insure plaintiff for the term of one year from March 15, 1924, to March 15, 1925.    P further testified that W did not apply for insurance to run from February 15 and that the entry of the date on the order as March 15 was not due to any mistake; that he did not write to the companies about the insurance, but

did send them, promptly, notice of the policies by his daily report.  No objection was made by the companies to the insurance; but when notified of the loss they refused to pay any insurance for the reasons stated.

Plaintiff's actions are founded not on the policies, but on the alleged oral contracts of insurance made on February 15. His claim is that the contracts were for present insurance to begin at once, to be evidenced by policies in the standard form to be issued later.  In *Shabeck* v. *Standard Fire Ins. Co.*, 46 R. I. 121, a parol contract for renewal of insurance was held to be valid.  An oral contract for insurance does (1) not differ in principle from a renewal and is valid, and is so held to be almost universally.  26 C. J. p. 43 and cases cited.  Defendants' attorney admits that P had authority to bind the several defendants by oral contracts, either to issue policies or to insure pending the issuance of policies, but claims that the essentials of a complete oral contract of insurance are lacking in the present case.  It is true that nothing was said about the rate; but both parties manifestly understood that the rate should be the customary and fixed rate on furs and the clerk made the same rate of premium for each policy.  So, likewise, as to the duration of the risk.  W testified that it was understood it was to be for the customary period of one year and P's entry on the order blank confirms this.  There is proof to establish these essentials of a parol contract of insurance, namely, the subject matter of the risk, the amount of insurance, the rate of premium, the duration of the risk and the identity of the parties.  The substantial controversy is, in fact, in regard to one element only of the oral contracts, namely, the time when the insurance was to begin.  On this issue the evidence is conflicting.  The question now is not on the weight of the evidence, but, as a verdict was directed, was there any evidence at all to support the plaintiff's claim.  Assuming, as there is evidence to support plaintiff's claim, that P made a mistake in the entry of the date on the order blank, the issue narrows down to this:  is that mistake to

be attributed to plaintiff or to defendants?  Or, to state it in another way:  if P did make an error in writing the date on the order blank, was he, in performing that act the agent of plaintiff or of the defendant companies?

In deciding this question the usual methods and the statutory requirements for the conduct of the business of fire insurance are to be considered.

The business in this State of foreign insurance companies is regulated by statute (G. L. 1923, C. 256).  Section 6, C. 256, provides that foreign companies admitted to do business in this State shall make contracts of insurance only through licensed resident agents.  Contracts made by companies in violation of said chapter are valid, but any agent acting within this State in effecting such contracts, is subject to a penalty (s. 17) and upon refusal or neglect of such company to comply with the insurance laws, the authority of such company and its agents to do business in this State may be revoked by the Insurance Commissioner.  One purpose of the statute undoubtedly is, while enabling responsible foreign companies to do insurance business in this State, to furnish reasonable protection to persons taking out insurance, who are required to deal with such companies only through its resident agent or agents.

(2) (3) In the cases at bar, to the applicant for insurance P stood in the place of the insurance companies; he was their agent with power to make contracts of insurance binding upon them.  Usually in dealing with an agent representing several insurance companies it is immaterial to the applicant for insurance in what particular company the insurance is placed.  In apportioning the insurance, the agent acts for both the insurer and the insured, but not as the exclusive agent of either.  When the agent once makes the apportionment, his authority to act for the insured ceases and the contract of insurance, if definite in other respects, is then complete.  If P had told W the names of the companies and the amounts of insurance in each, defendants, we think, would be bound by this action of their agent.  The result

would be the same, if the agent made the apportionment but did not inform W. The method of selection of a particular company or apportionment of insurance by an agent is not prescribed by law. If the applicant for insurance can prove that such selection or apportionment has been made, he is not bound by the business system of the agent in the conduct of his business with his principal which is not known and assented to by him. W says P told him that he was covered from the date of the application. This is denied by P. A question of fact thus is presented. P admits that he did apportion the insurance before W left his office, but he says this was done to become effective March 15 and not February 15. To support his claim he puts in evidence his private memorandum.

W's authority was limited to making a contract for immediate insurance. P's authority was not so limited. If P agreed that the insurance should begin at once the contract was complete and valid when the allocation was made. If the entry of the date was inadvertent, as plaintiff claims, we think this mistake is to be attributed to defendants and not to plaintiff, as P was then preparing instructions for the use of his clerk in the furtherance of the business of defendants. The memorandum introduced by P was a self serving document; it was evidence offered to substantiate P's oral testimony. The question of the credence to be given it, in whole or in part, was a question of fact which in the first instance should be determined by a jury. The fact that the entry contained admissions by P, the benefit of which is claimed by plaintiff, does not preclude plaintiff from contesting the accuracy and truth of other disconnected parts of the memorandum. Plaintiff was not required to accept or reject the memorandum in its entirety; a part may be true and a part false.

The retention of the policies by plaintiff for a period of three weeks can not in the circumstances be held as a matter of law to be a substitution of new written agreements as evidenced by the policies for an existing oral agreement.

The legal effect of such conduct of the plaintiff is dependent on the facts in each case. As W's authority was limited he could not bind plaintiff by accepting a policy for future insurance. Plaintiff was entitled to a reasonable time to examine the policies and to decide whether they were satisfactory. If his testimony is true that he was unable to read, his conduct in retaining the policies can not be held as a matter of law to be an acceptance of new written contracts offered to him by the insurance companies. As thus appears, there were disputed questions of fact which should have been submitted to a jury. The direction of the verdicts was erroneous.

Plaintiff's exception in each case is sustained. Each case is remitted to the Superior Court for a new trial.

*George F. Troy, Robinson & Robinson,* for plaintiff.

*Sherwood, Heltzen & Clifford, Sidney Clifford,* for defendants.